FLORENCE HELSLEY ET AL. v. J. S. MOSS ET AL.

Decided October 24, 1908.

**1.—Appeal—Bill of Exception—Statement of Facts—Conflict—Practice.**

When a bill of exception shows that certain testimony was excluded, and the statement of facts, agreed to by counsel for both parties and approved by the trial judge, shows that it was admitted, the Appellate Court being unable to say which is correct will not consider an assignment of error based upon the alleged exclusion of said testimony.

**2.—Will—Undue Influence—Mental Incapacity—Insufficient Evidence.**

In an action to set aside a will on the ground of undue influence and mental incapacity, declarations of the testatrix concerning the disposition of her property, considered, and held properly excluded on the ground that they did not tend to prove the allegations of petition, and were too remote in point of time. To show undue influence in the execution of a will the evidence must be direct or the circumstances showing such must be of a reasonably satisfactory and convincing character.

Appeal from the District Court of Johnson County. Tried below before Hon. O. L. Lockett.

*Davis & Davis* and *Cleveland & Haynes,* for appellants.

*Brown & Lomax, Poindexter & Padelford, Odell & Johnson* and *Ramsey & Odell,* for appellees.

RAINEY, CHIEF JUSTICE.—This suit was brought by Florence Helsley and husband against J. S. Moss, W. H. F. Moss, Mrs. Fannie Barnes, Mrs. L. B. Taylor and husband, A. L. Taylor, Eula Holdman and husband, James Holdman, and Roy Hedges, to set aside the last will and testament of Mrs. L. E. W. Moss, on the ground of undue influence and mental incapacity. On the trial the court instructed a verdict for defendants, and plaintiffs appealed the case to this court.

The evidence shows that when Mrs. L. E. W. Moss married J. S. Moss, about 1865, she was a widow Pearce, and had two children, Florence Pearce and Mollie Pearce. The latter died, leaving two children, Eula and Roy Hedges. Florence Helsley, *nee* Pearce, and husband, are the plaintiffs herein. Mrs. L. E. W. Moss had three children by Moss, who survive her, to wit: W. H. F. Moss, Fannie E. Barnes and Mrs. L. B. Taylor. Her two grandchildren, Eula and Roy Hedges, also survive her. At the time she executed her will she was of sound mind, and the evidence fails to show that any undue influence operated upon her in the execution of the will.

Appellants' first assignment complains of the court in excluding the testimony of Mrs. Helsley, as follows: "She proposed to prove by her own evidence that about 1886 her mother, Mrs. Moss, was sick, and that she was there, and that J. S. Moss brought a gentleman in the room that her mother was in, and gave him a seat by the stove; and after he had been there a short time her mother opened her eyes and looked at the man, and asked who the man was, and that J. S. Moss answered it was Col. Oatis, and told her mother that he, J. S. Moss, wanted her to make

a will and fix it up, and her mother told J. S. Moss to take Col. Oatis back as quick as he had brought him there."

The bill of exceptions shows that said testimony was offered, but that the court excluded and refused to admit it. The statement of facts shows that said testimony was admitted. The statement of facts is agreed to, and signed by counsel for both parties, and approved by the trial judge. This being the condition of the record, we are unable to say which is correct, and the assignment will not be considered by this court. (Ramsey v. Hurley, 72 Texas, 194; Wiseman v. Baylor, 69 Texas, 63; Scott v. Childers, 24 Texas Civ. App., 349.)

Appellants' second complaint is that the court erred in not admitting the testimony of Mrs. Helsley, to the effect "that her brother, Jackson Hill Pearce, died a few days before their father died, and that her brother's death was unknown to her father at his death." The will of George M. Pearce, the first husband of Mrs. Moss, bequeathed his interest in certain property to his three children, but one of the children, the boy, died before George M. Pearce did. The appellants insist that, as her mother took that interest, that she was entitled to prove the facts stated, as she was entitled to an interest in the estate that had been willed to the boy. We do not think the evidence pertinent to the issue raised by the pleadings. The suit was to annul Mrs. Moss' will on the ground of mental incapacity and undue influence. The testimony did not bear on that issue. Mrs. Helsley had sued for her part of the property that had been left by her father, which she had received. Pearce died in 1863, and more than forty years had elapsed before this claim was asserted by her.

Appellants' third assignment of error complains of the court in refusing to admit the testimony of Mrs. Helsley, to the effect "that her mother, Mrs. L. E. W. Moss, was at her house in 1900, and that a buggy came in at plaintiff's pasture gate and witness said she wondered who that was; that she had never seen that rig go through there before; and her mother said she guessed it was somebody that the Driskill folks had sent for; that the Driskills were trying to get Mr. Driskill's mother to make a will, and that they were ding-donging the life out of her, and said it was not right, and she said they wanted the old lady's property, and that she did not think it was right to do that way, and cut Mollie Scroggins out, and, if she was Mollie, and they did, she would fight them as long as she had a dollar. And a few minutes after this conversation her mother said: 'I thought something of making a will; I don't know how to fix it up;' that she had thought about leaving her home place to Mr. Moss for his lifetime. She wanted to leave him plenty, and she thought that ought to be enough to keep him up as long as he lived. She wanted to fix it so her children should have what she had—that she did not want no woman to come there and enjoy it." We think there was no error in this action of the court. Mrs. Moss' will was executed in 1900. There was no evidence of mental incapacity on her part to make her will at that time, nor was it shown that the will was made under undue influence, or that it was not her voluntary act.

Appellant's fourth assignment is, in effect, that "Plaintiff offered to prove by Mrs. Helsley, while she was on the stand, and after it had been shown that her father was dead, and had left considerable property, and

had disposed of same by will, giving certain property to his wife and to his children, and that her mother had married one J. S. Moss, and the witness had married, that she, the witness, had brought suit against her mother and J. S. Moss for the property that was coming to her from her father's estate, and that, during the pendency of said suit, the same was compromised, and that, leading up to the compromise, that her mother came to her and told her if she would compromise, and take what was left in the will—that is, the land—she would make witness the same as the balance of her children at her death, but if she did not she would debar her; and that witness accepted her mother's proposition, and the suit was settled on said basis. The evidence was objected to because it was irrelevant, and did not tend to prove any issue in the case, etc., and the same was excluded." This evidence was offered, as appellants claim, to show the state of Mrs. Moss' mind at that time—1884 or 1885—and the obligation of Mrs. Moss morally to carry out her promise to witness.

The testimony was rightfully excluded. The purported compromise and promise were made fifteen years before the will was executed and eighteen years before Mrs. Moss died. It was subject to the objection of being too remote. Besides, if it was sufficient upon which to base a right, there is no pleading alleging such a ground as a cause for setting aside the will.

It was not error to exclude the statement of Mrs. Moss, made during her last illness, "that she felt like she had all with her when she had Henry and the witness." It tended to prove no issue in the case.

The court did not err in excluding the testimony of L. O. Bonham and J. Q. Bonham, to the effect that J. S. Moss was a very determined man, and when he undertook anything he did not let up until he accomplished it. This evidence was immaterial, unless there was some evidence tending to show that Moss had exercised undue influence upon Mrs. Moss in making her will.

Appellant offered to show by O. L. Bonham that he had heard J. S. Moss say, soon after he went on the Moss place, and at different times and places during the entire time that he remained on said place, that Mrs. Helsley had gotten all her estate, and all that she would get; that she had received her part, and would get no more; and also offered to prove by J. Q. Bonham that, in 1891, he was at J. S. Moss' house, and was sitting with Moss and wife on their front gallery, and that Mrs. Moss stated that she intended for all of her property that she had left at her death to be equally divided among her children, and that Moss objected to it, and said that the Pearce heirs would not get any more if he could help it. The matter was discussed between Moss and wife—could not tell how long—might have lasted half an hour; Moss kinder got mad, like he generally did in conversation, and left.

This testimony, on objection, was not admitted, and exceptions reserved. O. L. Bonham had lived on the Moss place about sixteen years, leaving there about five years before the trial. The conversation heard by J. Q. Bonham was in 1891, nine years before the will was made. This evidence we think too remote to be admissible on the question of undue influence. (McElroy v. Phink, 97 Texas, 147; Johnson v. Brown, 51 Texas, 65-79.)

The evidence as to both Bonhams as to the declarations of J. S. Moss was inadmissible. Moss at the time of trial was dead, therefore not a party to the suit. There was no collusion shown to have existed between him and the other legatees to use any influence whatever upon Mrs. Moss as to how she should make her will. The testimony, therefore, as to the other legatees, was not admissible to affect their interest. This applies also to appellants' tenth assignment of error, and said assignment is overruled. (Seibert v. Hatcher, 102 S. W., 962.)

The evidence of Mrs. Driskill, offered to show that Mrs. Moss said that, if she ever made a will, that each of her children should share alike— that she would never leave out one of her children—was properly excluded.

The appellant complains of the action of the court in instructing a verdict. We do not think the court erred in this respect. The evidence admitted by the court utterly failed to show that Mrs. Moss, at the time, was mentally incapacitated to execute a will, or that undue influence was. exercised upon her in the execution thereof. We also think that if the testimony excluded had been admitted and considered, it, with the testimony adduced, was insufficient to have set aside the will. Therefore no harm resulted by the exclusion of the evidence complained of. There is no direct evidence of any fact that Mrs. Moss was unduly influenced to make her will as she did. To show undue influence, the evidence must be direct, or the circumstances showing such "must be of a reasonably satisfactory and convincing character." 1 Underhill on Wills, section 132.

Evidently Moss and the other legatees desired that the will be made as it was, but that Mrs. Moss did not exercise her own volition of mind in its execution the evidence fails to show. She lived three years after its execution, and there is nothing to show that she desired to revoke it.

If it could be said that appellant did not receive as much through the will as she thought she should, it raises no presumption of undue influence. (Id., 135.) The will purported to dispose of property owned by Mrs. Moss. The legatees, besides J. S. Moss, were the children and grandchildren of Mrs. Moss, and she probably considered that the disposition of the property made by her would make the legatees equal in amount to that possessed by appellant, and this of her own volition.

We find no reversible error in the record, and the judgment is affirmed.

*Affirmed.*

Writ of error refused.