MATHEWS v. MATHEWS et al. (No. 8702.)

(Court of Civil Appeals of Texas. Galveston. June 11, 1925.)

1. Wills ⬳166(2)—Finding will procured by undue influence not sustained by evidence.

Evidence *held* not to sustain finding that execution of will by sister making one of brothers sole beneficiary was procured by undue influence.

2. Evidence ⬳116—Refusal to permit proponent of will to explain what he told contestant relative to transaction between former and testatrix held erroneous.

On hearing of application by one of testatrix's brothers for probate of will making him sole beneficiary, wherein contestant testified that proponent told him that he got testatrix to make will in question on form prepared by him, and that, if will were written in her handwriting, no witnesses were necessary, refusal to permit proponent to testify as to what he did tell contestant was erroneous.

3. Wills ⬳166(12)—Circumstances to establish undue influence must be reasonably convincing.

In absence of direct evidence of undue influence in procurement of will, it may be shown by circumstances, but the circumstances relied on must be reasonably satisfactory and convincing.

4. Wills ⬳163(2)—Confidential relation does not shift burden of proving undue influence.

Mere existence of confidential relations between testator and beneficiary does not raise presumption of undue influence and cast burden upon beneficiary of disproving it.

Appeal from District Court, Waller County; J. D. Harvey, Judge.

---

Application by R. C. Mathews for the probate of the will of Mrs. S. C. Todd, deceased, contested by H. A. Mathews and others. From a judgment refusing the application, proponent appeals. Reversed and remanded.

R. E. Tompkins and Keet McDade, both of Hempstead, for appellant.

Maurice Hirsch & Allen Hannay, of Houston, and Krueger & Duncan, of Bellville, for appellees.

LANE, J. R. C. Mathews filed in the county court of Waller county his application for the probate of the will of Mrs. S. C. Todd, deceased. H. A. Mathews, W. W. Mathews, C. P. Mathews, Katie Mathews, and B. F. Mathews filed their contest of such application. For grounds of contest they alleged that, at the time of the execution of said will, Mrs. Todd was of unsound mind, and that she was induced to make said will by the exercise of undue influence over her by proponent, R. C. Mathews.

The will was admitted to probate in the county court, and the cause was carried by appeal to the district court. The cause was tried in the district court before the court without a jury, and judgment was there rendered refusing the application for the probate of the will. From such judgment R. C. Mathews has appealed.

Appellant insists, substantially, that the court erred in refusing to admit the will to probate (1) because the undisputed evidence shows that the will was duly executed by Mrs. Todd in such manner and form as to meet the requirements of law in such matters, and that at the time of such execution Mrs. Todd was of sound mind and disposing memory; (2) because the finding of the court that the execution of the will was procured by undue influence, exercised by proponent over testatrix, is so against the great weight and preponderance of the evidence as to be clearly wrong.

[1, 2] Appellant also insists that the judgment should be reversed and the cause remanded in that the court erred as indicated by the following statement:

H. A. Mathews, one of the contestants, testified that after the death of the husband of Mrs. Todd, she (Mrs. Todd) made her home with proponent, R. C. Mathews, her brother, for 26 years next preceding her death; that it was his understanding that Mrs. Todd originally turned over to proponent, R. C. Mathews, about $500 in money a short time after the death of her husband, together with some other small amount; that proponent handled said $500 just as if it was his own, and that, at the time of the death of Mrs. Todd, proponent filed an inventory of the estate showing that he held for the same $2,000; that after the death of Mrs. Todd he had a conversation with proponent in the bank at Hempstead in which proponent told him that he (proponent) got Mrs. Todd to make the will offered for probate, dated January 28, 1921, on a form prepared by proponent; that he (proponent) told Mrs. Todd that if said will was written in her own handwriting no witnesses were necessary.

Proponent, R. C. Mathews, testified in his own behalf: That he remembered having a conversation with H. A. Mathews at the time and place testified to by said Mathews. Proponent was then asked by his counsel if said conversation was correctly detailed by H. A. Mathews, to which question he replied, "No; not exactly." That at this point counsel for contestant objected to proponent making any further statement relative to said conversation, upon the grounds that the proposed testimony related to transactions between a party to a suit and an administrator, as to transactions with and statements made by testatrix. The court sustained such objection. Proponent reserved his bill of exception, showing that, had he been permitted to testify relative to said conversation, he would have testified that in said conversation that he was not present when Mrs. Todd wrote her will; that he furnished her a form of will at her instance and request; that he did not in any sense get her to make the will, and did not know when it was signed or written out by the testatrix.

In our opinion there are but two questions submitted for our decision: First, was the finding of the court that the execution of the will was induced by means of undue influence so against the weight and preponderance of the evidence as to be clearly wrong? Second, did the court err in refusing to permit proponent, as a witness, to explain what he did tell H. A. Mathews in the conversation testified to by H. A. Mathews? We think both of these questions should be answered in the affirmative.

The will offered for probate is as follows:

"I, S. C. Todd being of sound mind and body do hereby make this my last will. If I have any debts I want them paid. I want a suitable tombstone put at my grave. Then I give to my brother R. C. Mathews all of my money that is left—my reason for giving him what I have is that he has always taken care of me and my interest and I feel that it is right for him to have it.         S. C. Todd."

It is shown that the will was wholly written by Mrs. Todd, and it is shown by such an overwhelming preponderance and weight of the evidence that at the time it was executed Mrs. Todd was of sound mind, that that fact is not seriously questioned, if at all, by appellees on this appeal, and should not be considered by this court as a controverted issue.

We think the conclusion of the trial court that Mrs. Todd was induced to make the will by reason of undue influence exercised over her by proponent, R. C. Mathews, if not entirely unsupported by any evidence, was

at least so against the great weight and preponderance of the evidence as to be clearly wrong. It was shown that after·the death of the husband of Mrs. Todd, she made her home with her brother R. C., Mathews, proponent, for 24 years before making the will and for 26 years before her death. It is shown that her estate at some time after the death of her husband consisted of a small sum, about $500, which she turned over to her brother R. C. Mathews; that said brother handled said funds, investing and reinvesting the same in his own name, until, at the time of the death of Mrs. Todd, it had increased to $2,000. It was shown that Mrs. Todd left no children surviving her, and that three of the contestants are her brothers and the others children of a deceased brother.

No witness testified to any fact tending to show that Mrs. Todd's action in making her will was not free and voluntary, nor that such action was induced by anything wrongfully said or done by proponent, R. C. Mathews, except H. A. Mathews, who testified that proponent told him in a conversation, after ·the death of Mrs. Todd, that he furnished Mrs.ˋ Todd with a form for writing her will, and that he had her to make the will offered for probate, which testimony proponent sought to refute by his testimony, which was, as hereinbefore shown, excluded by the court upon the objection of counsel for contestants. The fact that proponent attended to all of testatrix's business affairs, which he so well and faithfully managed, as to increase an estate of the value of $500 to an estate of $2,000 in .26 years, while at the same time he fed and clothed testatrix all these years, and presumably paid her funeral expenses (a remarkable piece of financing), by no manner of reasoning should be considered as a fact tending to show, either directly or circumstantially, that the execution of the will was procured by the exercise of undue influence by R. C. Mathews upon Mrs. Todd. Proponent was the agent of Mrs. Todd, chosen by her at a time when she was in possession of her full mental capacities, to transact her business affairs. The fact that proponent transacted the business affairs of testatrix in the manner shown furnishes no evidence that he imposed his will upon her or, thwarted or undertook to thwart her wishes or purposes in any manner. There is no evidence that proponent knew that she intended to or had made him the sole beneficiary under her will until he saw it after her death.

[3] It is true that in the absence of direct evidence of undue influence such influence may be shown by circumstances, but in such cases the circumstances relied on must be of a reasonably satisfactory and convincing character. Heesley v. Moss, 52 Tex. Civ. App. 57, 113 S. W. 599 (writ of error refused); Simon v. Middleton, 51 Tex. Civ. App. 531, 112 S. W. 444; Stolle v. Kanetzky (Tex. Civ. App.) 259 S. W. 663.

"Undue influence cannot be presumed or inferred from opportunity or interest, but must be proved to have been exercised, and exercised in relation to the will itself, and not merely in other transactions." Patterson v. Lamb, 21 Tex. Civ. App. 512, 52 S. W. 98 (writ of error refused).

"Mere persuasions or entreaties will not invalidate a will on the ground of undue influence. * * * It is also necessary to prove something more than a mere suspicion of undue influence. * * * Evidence of opportunity and the fact that a former will differing from the latter had been destroyed by the testator would not establish undue influence. * * * In order to set aside the probate of a will on account of undue influence, the burden is on him who is attacking the will to show the testator has been induced to act contrary to his own wishes and to make a different will from one he would have made had he been left entirely free to act according to his own judgment and discretion. His free agency must have been shown to have been destroyed by the influence of another, and that influence must have been in force and effect at the very time of the execution of the will." Stolle v. Kanetzky (Tex. Civ. App.) 259 S. W. p. 663.

"The influence over a testator of one who is his wife, child, guardian, attorney, spiritual adviser, or who occupies some other confidential relation to him, is not necessarily undue influence, although it may cause the court to examine with greater scrutiny, and may, when coupled with other circumstances, raise a presumption of undue influence, but the question must be determined as in other cases by ascertaining whether the free agency of the testator has been destroyed. Indeed it is natural and proper that persons occupying family relations should exercise some influence over each other and should remember each other in their wills." 40 Cyc. p. 1148, par. 7.

The will in question is in no sense an unreasonable one, under the facts and circumstances shown. The gift of testatrix's small estate to her brother who had taken care of her for 26 years, in sickness and in health, was not an unreasonable gift. It was such as should have been expected under the circumstances. Such disposition of such estate was not only such as should have been expected, but it was just and proper. The testimony of H. A. Mathews that Mrs. Todd paid proponent for her board for the 26 years is refuted by his further testimony that Mrs. Todd turned over to proponent about $500 only, and that proponent at the end of said 26 years accounted to her estate for $2,000.

[4] It is the general accepted view, we think, that the mere existence of confidential relations between the testator or testatrix and the beneficiary under the will does not raise the presumption that the beneficiary had exercised undue influence over the testator or testatrix and cast upon the beneficiary the burden of disproving undue influence. In McElhaney v. Jones, 197 Ala. 303,

72 So. 531, the Supreme Court of Alabama, in a very able opinion, held that one attacking a will for fraud or undue influence does not shift the burden of proof to proponent of the will by showing confidential relations borne by the beneficiary toward testatrix.

We think the weight and preponderance of the evidence is such as to show that the finding of the court that the execution of the will was procured by the exercise of undue influence over Mrs. Todd by proponent is clearly wrong. We also think the court erred in refusing to permit proponent to testify as to what he told H. A. Mathews in the conversation testified to by said H. A. Mathews.

For the reasons pointed out, the judgment is reversed, and the cause remanded.

Reversed and remanded.